IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LEWIS B. KIZER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:06-cv-1109 |
| ) | Judge Trauger |
| PROGRESSIVE CASUALTY INS. CO. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendant Progressive Casualty Insurance Co. (Docket No. 53), to which the plaintiff has responded (Docket Nos. 59-60), and the defendant has replied (Docket No. 63). For the reasons discussed herein, the defendant's motion will be granted.

## BACKGROUND

On March 25, 2005, a motorcycle driven by the plaintiff, Lewis Kizer, collided with a pick-up truck driven by an uninsured motorist, Eduardo Calderon. Kizer sustained serious injuries in the accident.

Kizer was insured with the defendant, Progressive Casualty Insurance Company ("Progressive"), through a motorcycle policy of insurance.[1] The policy provided "Uninsured Motorist Bodily Injury" coverage with limits of $50,000 per person and $100,000 per accident,

---

[1] Unless noted otherwise, the facts are drawn from the plaintiff's response to the Statement of Undisputed Facts in Support of Progressive Casualty Insurance Company's Motion for Summary Judgment. (Docket No. 61.)

1

and provided that Progressive would "pay for damages, other than punitive or exemplary damages, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury." (Docket No. 53 Ex. A.)

Following the accident, Kizer sought coverage from Progressive under the Uninsured Motorist Bodily Injury provision of the policy, and Progressive undertook an investigation of the accident. Keith Reilly, a claims specialist for Progressive, obtained a copy of the police report from the accident as well as statements from Calderon and the two witnesses listed in the police report. Reilly also inspected and took pictures of the accident scene, talked to an employee at a nearby gas station, and talked to Kizer, although Kizer himself had no recollection of the accident other than a recollection of "flying through the air." According to the police report, the accident occurred while Kizer was driving northbound on Donelson Pike in Nashville, Tennessee.[2] (Docket No. 53 Ex. C.) James Butler, one of the witnesses interviewed by Progressive, stated that, at the time of the accident, he was stopped in the center turn lane and Kizer was traveling northbound and had squeezed his motorcycle between Butler's car and the stopped northbound traffic.[3] (Docket No. 53 Exs. B, D.) Although Nicole Sparkman, the other witness that Progressive interviewed, did not see Kizer's motorcycle prior to the accident, her account of the accident was consistent with the other evidence. (Docket No. 62 Ex. D.)

---

[2] Donelson Pike has two northbound lanes of traffic, two southbound lanes of traffic, and a center turn lane. Calderon was leaving a gas station located on northbound Donelson Pike and attempted to cross the northbound and center lanes and make a left turn into the southbound lanes. Traffic in the northbound lanes had stopped to allow Calderon to exit the gas station at the time of the accident.

[3] Butler was associated with Calderon and had pulled out of the gas station and stopped in the center turn lane to wait for Calderon to turn out of the gas station at the time of the accident.

2

Case 3:06-cv-01109   Document 64   Filed 05/12/08   Page 2 of 15 PageID #: 467

On the basis of this investigation, Progressive concluded that the Uninsured Motorist Bodily Injury provision of the policy did not apply, as Kizer was not legally entitled to recover any damages from Calderon, since Kizer himself had caused the accident by maneuvering his motorcycle between the stopped traffic in the northbound lanes and Butler's car. In a letter dated April 13, 2005, Progressive informed Kizer of this determination.[4] Progressive also informed Kizer, however, that it would consider in the future any new or additional information about the accident.

The following year, on March 24, 2006, Kizer filed a lawsuit against Calderon and Progressive in Tennessee state court ("Initial Litigation"). On May 8, 2006, Kizer filed an amended complaint and made a formal demand on Progressive for its policy limits. (Docket No. 53 at 4.) In August 2006, Progressive offered its policy limits of $50,000 to Kizer, which Kizer accepted, in exchange for Kizer's signing a Release and Trust Agreement. In light of the Release and Trust Agreement, the Initial Litigation was dismissed with prejudice pursuant to an Order of Compromise, Settlement and Dismissal entered on September 26, 2006. (Docket No. 53 Ex. F.)

Shortly thereafter, Kizer filed another lawsuit against Progressive in Tennessee state court ("Pending Litigation"). The Pending Litigation involves claims of bad faith refusal to pay an insurance claim, breach of contract, fraud, and violation of the Tennessee Consumer Protection Act. All of these claims are premised on the arguments that Progressive did not conduct a thorough investigation into Kizer's claim and wrongfully delayed payment of that

---

[4]This determination did not affect Kizer's other coverages, and Progressive paid Calderon's third-party liability claim for property damage and for damage to Kizer's motorcycle.

3

claim, and that Progressive made intentionally false statements to Kizer to his detriment during the course of that investigation.

Progressive removed the Pending Litigation to this court and now seeks summary judgment with respect to all of Kizer's claims.

## **ANALYSIS**

### I.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]  Fed. R. Civ. P. 56(c).  To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a

---

[5]Kizer cites only Tennessee law in articulating the standard that governs a motion for summary judgment.  (Docket No. 60 at 7-8.)  However, in diversity cases such as this one, federal courts apply federal procedural law, including the Federal Rules of Civil Procedure.  *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965); *see also Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459 (6th Cir. 1986) ("When there is a motion for summary judgment in a diversity case, the provisions of Rule 56 control its determination.").

4

genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

**II.  Effect of Release on Plaintiff's Claims**

Progressive first asserts that it is entitled to summary judgment, as the Release and Trust Agreement bars all of Kizer's claims. (Docket No. 53 at 6-7.)

With respect the scope of a release, the Tennessee Supreme Court has stated:

Generally speaking, the scope and extent of a release depends on the intent of the parties as expressed in the instrument. A general release covers all claims between the parties which are in existence and within their contemplation; a

5

> release confined to particular matters or causes operates to release only such
> claims as fairly come within the terms of the release.

*Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974). The intent of the parties is determined by reference to "the entire instrument, giving effect to each and every part if possible, and consider[ing] the terms in light of all surrounding facts and circumstances." *Louis Dreyfus Corp. v. Aust Co., Inc.*, 868 S.W.2d 649, 654-55 (Tenn. Ct. App. 1993).

Here, the language of the release provides in relevant part:

> Received from PROGRESSIVE CASUALTY INS. CO, (hereinafter referred to as "the Company") the sum of FIFTY THOUSAND AND NO/100 Dollars ($50,000.00) in full settlement and final discharge of all claims, including claims under the above-numbered policy, for bodily injuries to LEWIS B. KIZER arising out of the ownership, operation, maintenance or use of a[n] UNINSURED automobile by EDUARDO CALDERON that occurred on or about MARCH 25, 2005, at or near DONELSON PIKE, NASHVILLE, TN.

(Docket No. 53 Ex. G.) Progressive argues, in effect, that this language constitutes a general release that encompasses not only the claims that had been asserted by Kizer in the Initial Litigation, but also the claims that Kizer asserts in the Pending Litigation, which he brought after signing the release. (Docket No. 53 at 6-7.) Kizer, by contrast, argues that the release was limited to claims for "bodily injuries" and thus does not extend to the claims in the Pending Litigation. (Docket No. 60 at 2.)

The language of the release here is not nearly as broad as the language in other releases that Tennessee courts have deemed to constitute general releases. *See, e.g.*, *Marlett v. Thomason*, No. M2006-00038-COA-R3-CV, 2007 Tenn. App. LEXIS 199, at *19-*20 (Tenn. Ct. App. Apr. 5, 2007) (holding that release extending to "all claims and causes of action of any kind whatsoever . . . relating to the validity of the Last Will and Testament . . . or relating to the distribution of [the Decedent's] estate" and "any and all claims, demand, or suits, known or

6

unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted in the above case, as of this date, arising from or related to the events and transactions which are the subject matter of this cause" constituted a general release); *Miller v. Stone*, No. E2004-00421-COA-R3-CV, 2005 Tenn. App. LEXIS 181, at *14 (Tenn. Ct. App. Mar. 29, 2005) (holding that release extending to "all claims, debts, dues, demands, and causes of action of every name and nature, however or whenever arising, whether cognizable in law or in equity, for or by reason of any manner or act, omission, event or occurrence, including all claims through and including the date of this Agreement which were or could have been asserted through and including the date of this Agreement" constituted a general release).

Here, the language providing that the release extends to "all claims . . . for bodily injuries" precludes a finding that the document constitutes a general release because, by its very terms, the release was limited to a certain set of claims—specifically, those for bodily injuries suffered by Kizer as a result of the accident. *See, e.g.*, *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.2d 677, 691-92 (Tenn. Ct. App. 1999) (holding that release extending to claims "for the injury resulting from the on-the-job accident of March 13, 1993" was not a general release and did not relieve the defendant from liability for "any and all claims arising out of the parties' employment relationship"); *Jackson v. Miller*, 776 S.W.2d 115, 116, 119 (Tenn. Ct. App. 1989) (holding that release extending to "all claims . . . for injuries to [the plaintiff]" did not encompass claim for loss of consortium due to injuries suffered by the plaintiff's wife). The claims here are not claims for bodily injuries, but rather claims for injuries that Kizer alleges to have suffered as a result of Progressive's handling of his claim.

7

Progressive argues that the pending claims are barred by the release as they would not have existed but for the existence of the original policy. In making this argument, Progressive relies on *Dreyfus*, in which the plaintiff signed a release that encompassed "all claims which [the plaintiff] asserted, or could have asserted, against [the defendant] in said litigation and growing out of the alleged contracts for the purchase and sale of corn," and additionally provided that "all claims arising out of the alleged contracts to purchase and sell corn were released whether [the defendant] be alleged to be liable as a party to that contract or as the principal of the party to said contract, or otherwise." 868 S.W.2d at 651. The court in *Dreyfus* found that a tortious interference claim that the plaintiff asserted after signing the release was barred by the release as that claim "arose out of the alleged contracts" and that, "[i]f not for the alleged contracts, there could be no tortious interference." *Id.* at 655. According to Progressive, Kizer's pending claims, like those of the plaintiff in *Dreyfus*, are "based inextricably upon the existence of the original policy." (Docket No. 53 at 7.) This argument is unpersuasive. First, the tortious interference claim and the underlying breach of contract claim asserted in *Dreyfus* have a much more substantial factual nexus than do Kizer's pending claims—alleging, in essence, breach of contract and fraud—with bodily injury claims. Additionally, the language in the release at issue in *Dreyfus* was far more general than that in the release here and encompasses a much broader range of claims than the release that Kizer signed.

As the release is not a general release, and as Kizer's claims here are not based on the bodily injuries he suffered as a result of the accident but, rather, on Progressive's handling of his insurance claim subsequent to that accident, the release does not bar to the pending claims.

8

### III.     Insurance Bad Faith Claim

Kizer alleges that Progressive acted in bad faith by failing to conduct a more thorough investigation of his claim initially and by delaying its payment of the policy limits. (Docket No. 1 Ex. 1 at 6-7.)

Tennessee law provides that an insurer is liable to an insured when the insurer, acting in bad faith, fails to pay the insured's claim promptly. The relevant statute states:

> The insurance companies of this state . . . **in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable** to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; **provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith**, and that such failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56-7-105 (emphasis added). To establish a claim under the statute, a plaintiff must demonstrate "(1) that the insurance policy, by its terms, became due and payable; (2) that a formal demand for payment was made; (3) that [the insured] waited sixty days after making demand before filing suit; and (4) that [the insurer's] refusal to pay was not in good faith." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 378 (6th Cir. 2007) (citing *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)). An insurer's refusal to pay is in good faith, and thus the insurer is not liable under the bad faith statute, if the refusal to pay "rests on legitimate and substantial legal grounds." *Id.* (quotation and citation omitted). Additionally, a delay in payment does not constitute bad faith where "there is a genuine dispute as to the value, no conscious indifference to the claim, and no proof that the

insurer acted from 'any improper motive.'" *Bard's Apparel Mfg., Inc. v. Bituminous Fire & Marine Ins. Co.*, 849 F.2d 245, 249 (6th Cir. 1988) (citing *Palmer*, 723 S.W.2d at 126).

Kizer relies on the deposition testimony of an insurance adjuster suggesting that one could have concluded, on the basis of the witness statements that Progressive considered in its initial investigation, that it was Calderon, and not Kizer, who was responsible for the accident.[6] (Docket No. 60 at 2-3; Docket No. 62 Ex. K.) Kizer also calls into question the motivations of Calderon and Butler, asserting that they both had reason to place the blame on Kizer rather than Calderon. (Docket No. 60 at 3.) Additionally, Kizer claims that Progressive's investigation was not thorough, in that Progressive did not obtain tapes of calls made to 911 following the accident, which, Kizer asserts, revealed the existence of two additional witnesses whose recollections differed from those of Butler and Sparkman.[7]

These objections, however, do not establish a genuine issue of fact as to whether Progressive acted in bad faith[8] in denying Kizer's claim. First, the mere fact that the information available to Progressive could have resulted, in hindsight, in a different conclusion on the question of liability does not suggest that Progressive lacked legitimate and substantial legal

---

[6]In addition to his arguments about the thoroughness of Progressive's investigation, Kizer enumerates several other facts that he characterizes as "material" (Docket No. 60 at 4-5) but that quite obviously are not material to the question of bad faith, including the facts that his medical bills were in excess of his policy limits, that Progressive never obtained his medical bills in the course of its investigation, and that Progressive never provided him with copies of the witness statements it obtained.

[7]Those additional witnesses stated that Kizer was actually traveling southbound, rather than northbound, when the accident occurred. (Docket No. 62 Exs. E, F.)

[8]Although Progressive asserts that Kizer has not established a genuine issue of fact as to any of these elements (Docket No. 53 at 11), this court need only address the "good faith" element, as that is dispositive.

10

grounds for the conclusion that it did reach at that time on the basis of the information that was before it, or that its refusal to pay was based on anything other than a genuine dispute as to liability. Likewise, although Kizer casts aspersions on Calderon and Butler, there is no evidence in the record of their ill motive other than Kizer's own speculation. Finally, the fact that Progressive did not review the 911 tapes does not save Kizer's claim. Progressive asserts, and Kizer does not dispute, that Progressive first learned of the existence of the 911 tapes when Kizer filed an amended complaint in the Initial Litigation. Consistent with its statement to Kizer that it would consider new information affecting its liability determination, once Progressive learned of the existence of those tapes, Progressive reviewed its decision and ultimately agreed to pay Kizer the policy limits in exchange for settling the Initial Litigation.

Even drawing all inferences in Kizer's favor, none of Kizer's evidence establishes a question of fact as to whether Progressive acted with conscious indifference to Kizer's claim or was motivated by any improper motive. Progressive conducted a reasonable investigation and had a legitimate basis for refusing to pay Kizer's claim consistent with the terms of the policy, and any delay in payment was the result of a genuine dispute as to liability. As neither Progressive's investigation nor its conclusion that it was not liable reflects bad faith, summary judgment is appropriate as to Kizer's insurance bad faith claim.

## IV. Breach of Contract Claim

Kizer additionally asserts that Progressive's alleged failure to thoroughly investigate his claim and its delay in paying the policy limits constitute a breach of the policy. (Docket No. 1 Ex. 1 at 4-6.)

Under Tennessee law, an insurance policy is interpreted according to its "plain and ordinary meaning." *Williamson*, 481 F.3d at 379 (quotation and citation omitted). The

11

Uninsured Motorist Bodily Injury provision of the policy at issue here provides that, in exchange for premium payments by Kizer, Progressive "will pay for damages, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury 1. sustained by an insured person; 2. caused by an accident; and 3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle." (Docket No. 53 Ex. A.) By the terms of this provision, Progressive is only obligated to pay Kizer in the event that Kizer is involved in an accident as a result of which he is legally entitled to recover damages from an uninsured driver—here, Calderon.[9]

Kizer does not provide any evidence nor any case law to support the premise that Progressive's actions constituted a breach of the policy. Although Kizer calls into question the thoroughness of Progressive's investigation and the soundness of the conclusion it reached with respect to liability,[10] the evidence demonstrates, to the contrary, that Progressive conducted a reasonable investigation and that the conclusion that Progressive reached with regard to the respective liabilities of Kizer and Calderon was based on legitimate and substantial legal grounds as discussed *supra* Section III. As there is no genuine issue as to whether Progressive breached the policy, summary judgment is appropriate.

## V.     Fraud Claim

---

[9]The policy further provides for arbitration in the event that Progressive and Kizer "cannot agree" on "the legal liability of the operator or owner of an uninsured motor vehicle." (Docket No. 53 Ex. A.)

[10]Kizer also asserts that Progressive filed an answer in the Initial Litigation that did not assert the affirmative defense of comparative fault and that this "further evidences a breach of contract" (Docket No. 1 Ex. 1 at 5), although he provides no explanation or argument as to why this is so.

Kizer also asserts that Progressive made false and intentionally misleading statements for the purpose of avoiding or delaying payment of his claim. (Docket No. 1 Ex. 1 at 7-9.)

To establish a fraud claim, a plaintiff must demonstrate (1) an intentional misrepresentation of a material fact; (2) that the statement was made with knowledge of its falsity or with reckless disregard of falsity; (3) that the plaintiff reasonably relied on the statement to his injury; and (4) that the statement relates to an existing or past fact. *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

Progressive claims that there were no misrepresentations of material fact here. (Docket No. 53 at 7.) Indeed, during his deposition, Kizer himself testified that the Progressive representative who investigated the claim never made any misrepresentations to him. (Docket No. 53 Ex. H at 69.) Kizer's insurance expert likewise testified that he was unaware of any misrepresentations made to Kizer. (Docket No. 53 Ex. J at 49-50.) The only specific misrepresentations that Kizer has pointed to in all of his submissions to this court are outlined in the complaint, where he alleges that Progressive represented that it "had carefully examined the circumstances regarding [Kizer's] claim" and "had spoken to all known parties to reach a conclusion that [Kizer's] actions were the proximate cause of [Kizer's] claim."[11] (Docket No. 1 Ex. 1 at 8.) Kizer provides no evidence, however, that these statements were false, let alone any indication of how he may have relied on these representations to his detriment. Moreover, the

---

[11]Kizer also alleges as a basis for the fraud claim the facts that Progressive filed an answer in the Initial Litigation that did not allege comparative fault as a defense and that Progressive failed to respond to discovery requests. (Docket No. 1 Ex. 1 at 8.) Kizer has provided no argument or caselaw, however, as to how these allegations could possibly underlie a valid claim of fraud.

13

evidence indicates that Progressive had, in fact, carefully examined the circumstances of the claim and spoken to all known parties in reaching its conclusion. As there is no genuine issue of material fact as to Kizer's fraud claim, summary judgment is appropriate.

## VI.  Tennessee Consumer Protection Act Claim

Finally, Kizer asserts that Progressive's actions constituted a breach of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.* (Docket No. 1 Ex. 1 at 9-10.)

The TCPA provides for a cause of action when an individual suffers "an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice . . . ." Tenn. Code Ann. § 47-19-109(a)(1). Kizer alleges that Progressive's actions—specifically, its delay in paying the policy limits and its allegedly fraudulent statements—constitute violations of the TCPA.[12] (Docket No. 1 Ex. 1 at 9-10.)

The Tennessee Supreme Court addressed the application of the TCPA to insurance policies in *Myint v. Allstate Insurance Co.*, holding that insurance companies are subject to the TCPA, despite the existence of complementary statutes regulating the insurance industry, such as the bad faith statute. *See* 970 S.W.2d 920, 926 (Tenn. 1998). The Court went on to hold that the insurance company's handling of a claim is not unfair and deceptive in the absence of "an attempt by [the insurer] to violate the terms of the policy, deceive the [plaintiffs] about the terms of the policy, or otherwise act unfairly," noting that the denial of the claim in that case "was [the

---

[12]The TCPA provides a laundry list of specific activities that constitute unfair or deceptive acts or practices. *See* Tenn. Code Ann. § 47-18-104(b). Kizer does not rely on any of those specific provisions, but rather on the statute's catch-all provision, which prohibits "any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27).

14

insurer's] reaction to circumstances that [it] believed to be suspicious." *Id.* Such actions, the Court held, do not constitute a violation of the TCPA.

The same reasoning applies in this case. As in *Myint*, Progressive's actions in denying Kizer's claim were based on the information before it and were reasonable under the circumstances. *See Ginn v. Am. Heritage life Ins. Co.*, 173 S.W.3d 433, 446 (Tenn. Ct. App. 2055) (holding that allegation that insurer did not have a physician review medical records prior to denying insured's claim does not "remotely state[] a cause of action under the TCPA"). There is nothing to suggest that Progressive violated the terms of the policy, deceived Kizer about the terms of the policy, or acted unfairly in the course of its investigation or in making its initial determination with respect to Kizer's claim. As there is no genuine issue of material fact as to Kizer's TCPA claim, summary judgment is appropriate.

## CONCLUSION

For the reasons discussed herein, the Motion for Summary Judgment filed by the defendant will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

15